# PANAMA RAILROAD COMPANY *v.* JOHNSON.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 369. Argued December 7, 1923.—Decided April 7, 1924.

1. As a general rule, where existing legislation on a particular subject has been systematically revised and restated in a comprehensive general statute, such as the Judicial Code, subsequent enactments touching that subject are to be construed and applied in harmony with the general statute, save as they clearly manifest a different purpose. P. 383.

2. Section 20 of the Act of March 4, 1915, as amended June 5, 1920, which allows a seaman suffering personal injury in his employment to sue his employer for damages, declares that " jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." *Held,* that the quoted provision (construed with Jud. Code, §§ 24 and 51,) relates only to venue, conferring a personal privilege which a defendant may waive, if he enters a general appearance before or without claiming it. *Id.*

3. Section 2 of Art. III of the Constitution, in extending the judicial power of the United States to " all cases of admiralty and maritime jurisdiction," by implication made the admiralty and maritime law the law of the United States, subject to power in Congress to alter, qualify or supplement it as experience or changing conditions might require. P. 385.

4. This power of Congress extends to the entire subject, substantive and procedural, and permits of the exercise of a wide discretion, though subject to well recognized limitations, one of which is that there are boundaries to the maritime law and admiralty jurisdiction which cannot be altered by legislation, and another, that the enactments, when not relating to matters whose existence or influence is confined to a more limited field, shall be coextensive with and operate uniformly in the whole of the United States. P. 386.

5. The Act of March 4, 1915, § 20, as amended, provides that any seaman suffering personal injury in the course of his employment may, at his election, maintain an action at law, with the right of trial by jury, " and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply."

*Held:* (a) The statute is not objectionable as an attempted withdrawal of subject matter from the reach of the maritime law, but is a permissible addition to that law of new rules concerning the rights and obligations of seamen and their employers. P. 388.

(b) Congress has power to make maritime rules in relative conformity to the common law or its modifications, and to permit enforcement of rights thereunder through proceedings *in personam,* according to the course of the common law on the common law side of the courts. *Id.*

(c) The statute is not to be construed as restricting enforcement of the new rights to actions at law, (which might mean an unconstitutional encroachment on the maritime jurisdiction,) but as allowing the injured seaman to assert his right of action under it either on the common law side, with right of trial by jury, or on the admiralty side, with trial to the court. P. 389.

(d) A statute may adopt the provisions of other statutes by reference. P. 391.

(e) The reference in the above statute is to the Federal Employers' Liability Act and its amendments. *Id.*

(f) The statute, with the legislation it incorporates by reference, has the uniformity required of maritime enactments. P. 392.

(g) The statute does not conflict with the Fifth Amendment in permitting injured seamen to elect between varying measures of redress and different forms of action without according a corresponding right to their employers. *Id.*

289 Fed. 964, affirmed.

ERROR to a judgment of the Circuit Court of Appeals affirming a judgment entered in the District Court for the Eastern District of New York on a verdict recovered by the plaintiff, Johnson, as damages resulting from personal injuries sustained at sea in the course of his employment by the defendant railroad company as a seaman. The action was based on § 20 of the Act of March 4, 1915, c. 153, 38 Stat. 1185, as amended by § 33 of the Act of June 5, 1920, c. 250, 41 Stat. 1007.

*Mr. Richard Reid Rogers* for plaintiff in error.

I. The act is unconstitutional, inasmuch as it is destructive of the admiralty and maritime jurisdiction of the

courts of the United States guaranteed by § 2, Art. III, of the Constitution.

The rights of seamen against the shipowner with respect to injuries sustained while in the service are well settled by the maritime law. They have remained virtually unchanged since the laws of Oleron, which provide (Art. VI) "that if a seaman in service of the ship happens to become wounded or otherwise hurt; in that case he shall be cured and provided for at the cost and charge of the said ship"; and (Art. VII) "that if sick he is to be set ashore and receive wages if the ship departs." As more specifically defined in *The Osceola,* 189 U. S. 158, they consist of a right to wages for the voyage and maintenance and cure, irrespective of fault on the part of the seaman; but to indemnity only in case of unseaworthiness or negligent medical treatment. The shipowner is not responsible for injuries to a seaman occasioned by the negligence of members of the crew, or ship's officers.

Under the railroad law there is of course no continuing obligation to pay wages or maintain and cure the employee, irrespective of the employer's fault; but upon the other hand the employer is responsible for the negligence of co-employees. There are other differences, as for example, the doctrine of comparative negligence, the non-assumption of the risk of appliances which fail to comply with statutory requirements, and the inability of the employer to limit his risk.

As the legal rights of the seaman under the act were construed below, the seaman alone is given the privilege of proceeding in admiralty for maintenance and cure if his case be one which would not justify a recovery under the railroad law, or upon the other hand, if his case be one which would not justify a recovery outside of maintenance and cure under the maritime law, of suing for full indemnity under the common law as modified by

the railroad law; as, to illustrate, where his injuries are due to the negligence of a co-employee. In other words, one party to a maritime contract or arrangement is given the right under the act in question of taking his case wholly from the jurisdiction and principles of the maritime law, and of transferring it to the jurisdiction of a common law court there to be decided under the principles of common law as modified or extended in the irrelevant field of railroad legislation.

But conceding that Congress may amend the maritime law by modifying the principle of *The Osceola* to the extent of holding the shipowner responsible for injuries received by one seaman through the negligence of another, nevertheless, in such a case it would be the maritime law itself, that was modified or amended. Under this act, however, the maritime law is not directly amended, but a cause of action essentially maritime in its nature is bodily removed, or, at the election of one of the parties, may be removed, to a common law court, there to be decided, not according to maritime principles, but according to the very different common law principles, as modified or extended, in the case of personal injuries to railway employees.

If Congress can take a cause of action essentially maritime and provide that it shall no longer be dealt with according to the principles of maritime law, but according to the principles of the common law, it could in the end destroy the entire constitutional jurisdiction of the courts of the United States over maritime causes of action. If Congress can authorize one party to remove his cause from the jurisdiction and principles of the maritime law, and have it treated according to the conflicting principles and rights of the common law, it could undoubtedly do the same thing directly without extending an election to the litigant. In other words, Congress could provide that in all cases of injuries sustained by seamen, such

cause of action should thereafter be tried in common law courts, according to common law principles, and there is no reason why it could not further provide that such causes could be tried according to common law principles in the courts of the several States. *New Jersey Steam Nav. Co.* v. *Merchants' Bank,* 6 How. 377.

Heretofore under the saving clause of the Judiciary Act of 1789, now Jud. Code, § 256, maritime rights could be prosecuted in common law courts where the common law gave an adequate remedy, but once there the litigant's rights would still be adjudicated according to the principles of the maritime law, *Carlisle Packing Co.* v. *Sandanger,* 259 U. S. 255; *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149; but under this act a common law procedure is not only authorized, but maritime rights are disregarded, and the very opposite common law rights or statutory modifications thereof, substituted in their place.

The Constitution is sufficiently broad to prevent the destruction in whole or in part of the maritime law and the jurisdiction of the courts of the United States with respect thereto. *The Lottawanna,* 21 Wall. 558; *The St. Lawrence,* 1 Black, 522; *Butler* v. *Boston & Savannah S. S. Co.,* 130 U. S. 527; *The Blackheath,* 195 U. S. 361.

The constitutional jurisdiction of the courts of the United States in maritime matters is exclusive. *The Moses Taylor,* 4 Wall. 411; *Martin* v. *Hunter's Lessee,* 1 Wheat. 304; *Claflin* v. *Houseman,* 93 U. S. 130; *Stevenson* v. *Fain,* 195 U. S. 165; *Farrell* v. *Waterman S. S. Co.,* 291 Fed. 604; *Butler* v. *Boston & Savannah S. S. Co.,* 130 U. S. 527; *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372; *Hanrahan* v. *Pacific Transport Co.,* 262 Fed. 951.

The difference between the creation of a right and the exercise of a common law remedy under the saving clause is well set forth in *Sudden & Christenson* v. *Industrial Accident Comm.,* 182 Cal. 437.

The argument against the statute is based not upon the lack of power of Congress to amend the maritime law, nor upon its lack of power to authorize a maritime right to be prosecuted in the common law courts, state or federal, but upon the right of Congress under the Constitution to destroy the substantive maritime law by substituting therefor the entirely distinct code of common law.

If the act be valid, it may be truly said that the judicial power of the United States no longer extends to *all* causes of admiralty and maritime jurisdiction, inasmuch as Congress has put it into the power of a seaman in a cause of action purely maritime in its nature, to take the case from out the jurisdiction of that law—the substantive law regulating his rights—and have it tried according to the principles of an entirely different system of law, in no sense maritime, and where the rights are quite diverse. State courts have assumed jurisdiction of seamen's actions brought under the act, *Lynott* v. *Great Lakes Trans. Co.,* 202 App. Div. 613; 234 N. Y. 626.

II. The act is in conflict with the Fifth Amendment.

The arbitrary and irrational discrimination carried by this law is apparent upon its face. If a privilege is to be given the plaintiff to try his cause of action under either one of two diverse systems of law, where not only the remedies but the rights are different, no sound reasoning can be advanced why a similar privilege should not be extended to the defendant. The law is confined to seamen alone, and does not protect any other class of employees engaged in the service of the ship, as, for example, stevedores.

III. The act is so vague and uncertain as not to constitute due process of law. Notwithstanding that the maritime law of the Constitution is universally recognized as an independent code with rights and remedies peculiar to itself, that law must now fluctuate accordingly as Congress may hereafter legislate with respect to employers

and employees in the entirely alien field of railroad employment. 'From now on, whenever Congress legislates upon that subject, it will unconsciously modify the maritime code as well. There is nothing in the act which limits the railroad legislation which affects the rights of seamen to the railroad legislation in force when the act was enacted.

This is the first case, so far as we have been able to ascertain, which has ever arisen, where Congress has endeavored to legislate concerning a fundamental constitutional power, or indeed upon any other subject, by the vague and confusing method of adopting *in solido* the general law relating to an entirely separate branch of jurisprudence. *Binghamton Bridge Case,* 3 Wall. 51, distinguished.

The act says that "all" statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees shall apply. But the Safety Appliance Act, the Boiler Inspection Act, and the Hours of Service Act are statutes affecting the rights of railroad employers and their employees, and the language of this act is certainly broad enough to make all of these apply in the case where a seaman has sustained injury. Many of the provisions of these acts could have no conceivable application to the case of seamen, but what does or does not apply must remain at the present time a matter of doubt, and neither the seaman nor the shipowner has any longer before him a definite standard of legal duty or liability. Perhaps an even greater confusion will grow out of the application of the law of limited liability.

It is a general rule of constitutional law that an act which is so indefinite as to prescribe an obligation and set up no standard by which such obligation can be measured by court or jury, is invalid. *United States v. Cohen Grocery Co.,* 255 U. S. 81; *Standard Corp. v. Waugh*

*Corp.*, 231 N. Y. 51; *Louisville & Nashville R. R. Co.* v. *Tennessee*, 19 Fed. 679; *Cook* v. *State*, 26 Ind. 278; *Succession of Pizzali*, 141 La. 647.

IV. The District Court which tried the case was without jurisdiction.

V. The evidence did not establish legal negligence upon the part of the defendant, and the jury should have been instructed to find a verdict for the defendant.

VI. The court erred in charging the jury upon the assumption of risk.

*Mr. Wade H. Ellis*, with whom *Mr. Silas Blake Axtell* was on the brief, for defendant in error.

*Mr. John M. Woolsey* and *Mr. Vernon S. Jones*, by leave of Court, filed a brief as *amici curiae*.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This was an action by a seaman against his employer, the owner of the ship on which he was serving, to recover damages for personal injuries suffered at sea while he was ascending a ladder from the deck to the bridge in the course of his employment,—the complaint charging that the injuries resulted from negligence of the employer in providing an inadequate ladder and negligence of the ship's officers in permitting a canvas dodger to be stretched and insecurely fastened across the top of the ladder and in ordering the seaman to go up the ladder. The employer was a New York corporation. The ship was a domestic merchant vessel which at the time of the injuries was returning from an Ecuadorian port. The action was brought on the common-law side of a District Court of the United States, and the right of recovery was based expressly on § 20 of the Act of March 4, 1915, c. 153, 38 Stat. 1185, as amended by § 33 of the Act of June 5, 1920, c. 250, 41 Stat. 1007, which reads as follows:

" Sec. 20. That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

The defendant unsuccessfully demurred to the complaint and then answered. The issues were tried to the court and a jury; a verdict for the plaintiff was returned, and a judgment was entered thereon, which the Circuit Court of Appeals affirmed. 289 Fed. 964. The defendant prosecutes this writ of error.

1. Apparently the action was not brought in the district of the defendant's residence or principal office as provided in the act; and on this ground the defendant objected that the District Court could not entertain it. The objection was not made at the outset on a special appearance, but after the defendant had appeared generally and demurred to the complaint. The court thought the objection went to the venue only and was waived by the general appearance; so the objection was overruled. 277 Fed. 859. Error is assigned on the ruling; but we think it was right.

The case arose under a law of the United States and involved the requisite amount, if any was requisite;[1] so

---

[1] See the first and third subdivisions of § 24 of the Judicial Code.

there can be no doubt that the case was within the general jurisdiction conferred on the District Courts by § 24 of the Judicial Code, unless, as the defendant contends, it was excluded by the concluding provision of the act, which says: "Jurisdiction of such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." Although not happily worded, the provision, taken alone, gives color to the contention. But as a general rule, where existing legislation on a particular subject has been systematically revised and restated in a comprehensive general statute, such as the Judicial Code, subsequent enactments touching that subject are to be construed and applied in harmony with the general statute, save as they clearly manifest a different purpose. An intention to depart from a course or policy thus deliberately settled is not lightly to be assumed. See *United States* v. *Barnes,* 222 U. S. 513, 520; *United States* v. *Sweet,* 245 U. S. 563, 572. The rule is specially pertinent here. Beginning with the Judiciary Act of 1789, Congress has pursued the policy of investing the federal courts—at first the Circuit Courts, and later the District Courts—with a general jurisdiction expressed in terms applicable alike to all of them and of regulating the venue by separate provisions designating the particular district in which a defendant shall be sued, such as the district of which he is an inhabitant or in which he has a place of business,— the purpose of the venue provisions being to prevent defendants from being compelled to answer and defend in remote districts against their will. This policy was carried into the Judicial Code, and is shown in §§ 24 and 51, one embodying general jurisdictional provisions applicable to rights under subsequent laws as well as laws then existing, and the other containing particular venue provisions. A reading of the provision now before us with those sections, and in the light of the policy carried into

them, makes it reasonably certain that the provision is not intended to affect the general jurisdiction of the District Courts as defined in § 24, but only to prescribe the venue for actions brought under the new act of which it is a part. No reason why it should have a different purpose has been suggested, nor do we perceive any. Its use of the word " jurisdiction " seems inapt, and therefore not of special significance. The words " shall be " are stressed by the defendant, but as they are found also in the earlier provisions which uniformly have been held to relate to venue only, they afford no ground for a distinction.

By a long line of decisions, recently reaffirmed, it is settled that such a provision merely confers on the defendant a personal privilege which he may assert, or may waive, at his election, and does waive if, when sued in some other district, he enters a general appearance before or without claiming his privilege. *Interior Construction & Improvement Co.* v. *Gibney,* 160 U. S. 217; *United States* v. *Hvoslef,* 237 U. S. 1, 11; *General Investment Co.* v. *Lake Shore & Michigan Southern Ry. Co.,* 260 U. S. 261, 272, 275; *Lee* v. *Chesapeake & Ohio Ry. Co.,* 260 U. S. 653, 655.

2. The defendant objects that the statute whereon the plaintiff based his right of action is in conflict with § 2 of Article III of the Constitution, which extends the judicial power of the United States to " all cases of admiralty and maritime jurisdiction." Before coming to the particular grounds of the objection, it will be helpful to refer briefly to the purpose and scope of the constitutional provision as reflected in prior decisions.

As there could be no cases of " admiralty and maritime jurisdiction " in the absence of some maritime law under which they could arise, the provision presupposes the existence in the United States of a law of that character. Such a law or system of law existed in Colonial times and

during the Confederation and commonly was applied in the adjudication of admiralty and maritime cases. It embodied the principles of the general maritime law, sometimes called the law of the sea, with modifications and supplements adjusting it to conditions and needs on this side of the Atlantic. The framers of the Constitution were familiar with that system and proceeded with it in mind. Their purpose was not to strike down or abrogate the system, but to place the entire subject—its substantive as well as its procedural features—under national control because of its intimate relation to navigation and to interstate and foreign commerce. In pursuance of that purpose the constitutional provision was framed and adopted. Although containing no express grant of legislative power over the substantive law, the provision was regarded from the beginning as implicitly investing such power in the United States. Commentators took that view; Congress acted on it, and the courts, including this Court, gave effect to it. Practically therefore the situation is as if that view were written into the provision. After the Constitution went into effect, the substantive law theretofore in force was not regarded as superseded or as being only the law of the several States, but as having become the law of the United States,— subject to power in Congress to alter, qualify or supplement it as experience or changing conditions might require. When all is considered, therefore, there is no room to doubt that the power of Congress extends to the entire subject and permits of the exercise of a wide discretion. But there are limitations which have come to be well recognized. One is that there are boundaries to the maritime law and admiralty jurisdiction which inhere in those subjects and cannot be altered by legislation, as by excluding a thing falling clearly within them or including a thing falling clearly without. Another is that the spirit and purpose of the constitutional provision require that

the enactments,—when not relating to matters whose existence or influence is confined to a more restricted field, as in *Cooley* v. *Board of Wardens,* 12 How. 299, 319,— shall be coextensive with and operate uniformly in the whole of the United States. *Waring* v. *Clarke,* 5 How. 441, 457; *The Lottawanna,* 21 Wall. 558, 574, 577; *Butler* v. *Boston & Savannah S. S. Co.,* 130 U. S. 527, 556, 557; *In re Garnett,* 141 U. S. 1, 12; *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 215; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 164; *Washington* v. *Dawson & Co., ante,* 219; 2 Story Const., 5th ed., §§ 1663, 1664, 1672.

In this connection it is well to recall that the Constitution, by § 1 of Article III, declares that the judicial power of the United States shall be vested in one Supreme Court " and in such inferior courts as the Congress may from time to time ordain and establish," and, by § 8 of Article I, empowers the Congress to make all laws which shall be necessary and proper for carrying into execution the several powers vested in the government of the United States. Mention should also be made of the enactment by the first Congress, now embodied in §§ 24 and 256 of the Judicial Code, whereby the District Courts are given exclusive original jurisdiction " of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it."

The particular grounds on which a conflict with § 2 of Article III is asserted are that the statute enables a seaman asserting a cause of action essentially maritime to withdraw it from the reach of the maritime law and the admiralty jurisdiction, and to have it determined according to the principles of a different system applicable to a distinct and irrelevant field, and also disregards the restriction in respect of uniformity. For reasons which will be stated we think neither ground can be sustained.

The statute is concerned with the relative rights and obligations of seamen and their employers arising out of

personal injuries sustained by the former in the course of their employment. Without question this is a matter which falls within the recognized sphere of the maritime law, and in respect of which the maritime rules have differed materially from those of the common law applicable to injuries sustained by employees in nonmaritime service. But, as Congress is empowered by the constitutional provision to alter, qualify or supplement the maritime rules, there is no reason why it may not bring them into relative conformity to the common-law rules or some modification of the latter, if the change be country-wide and uniform in operation. Not only so, but the constitutional provision interposes no obstacle to permitting rights founded on the maritime law or an admissible modification of it to be enforced as such through appropriate actions on the common-law side of the courts,— that is to say, through proceedings *in personam* according to the course of the common law. *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372, 384; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 159. This was permissible before the Constitution, and it is still permissible. Judicial Code, §§ 24 and 256; *Waring* v. *Clarke,* 5 How. 441, 460; *New Jersey Steam Navigation Co.* v. *Merchants' Bank,* 6 How. 344, 390; *Leon* v. *Galceran,* 11 Wall. 185, 188, 191; *Schoonmaker* v. *Gilmore,* 102 U. S. 118; *Knapp, Stout & Co.* v. *McCaffrey,* 177 U. S. 638, 646; *Carlisle Packing Co.* v. *Sandanger,* 259 U. S. 255, 259; *Red Cross Line* v. *Atlantic Fruit Co., ante,* 109.

Rightly understood the statute neither withdraws injuries to seamen from the reach and operation of the maritime law, nor enables the seaman to do so. On the contrary, it brings into that law new rules drawn from another system and extends to injured seamen a right to invoke, at their election, either the relief accorded by the old rules or that provided by the new rules. The election is between alternatives accorded by the maritime law as

modified, and not between that law and some nonmaritime system.

The source from which the new rules are drawn contributes nothing to their force in the field to which they are translated. In that field their strength and operation come altogether from their inclusion in the maritime law. *Louisville & Nashville R. R. Co.* v. *Western Union Telegraph Co.*, 237 U. S. 300, 303. True, they are not in so many words made part of that law; but an express declaration is not essential to make them such. As originally enacted, § 20 was part of an act the declared purpose of which was "to promote the welfare of American seamen." It then provided that in suits to recover damages for personal injuries "seamen having command shall not be held to be fellow-servants with those under their authority," and in *Chelentis* v. *Luckenbach S. S. Co., supra,* p. 384, this Court treated it as part of the maritime law, but held it did not disclose a purpose "to impose upon shipowners the same measure of liability for injuries suffered by the crew while at sea as the common law prescribes for employers in respect of their employees on shore." After that decision the section was reënacted in the amended form hereinbefore set forth as part of an act the expressed object of which was "to provide for the promotion and maintenance of the American merchant marine." In that form it makes applicable to personal injuries suffered by seamen in the course of their employment "all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees." Thus its origin, environment and subject-matter show that it is intended to, and does, bring the rules to which it refers into the maritime law.

But it is insisted that, even if the statute brings those rules into that law, it is still invalid in that it restricts the enforcement of rights founded on them to actions at law,

and thereby encroaches on the admiralty jurisdiction intended by the Constitution. It must be conceded that the construction thus sought to be put on the statute finds support in some of its words, and also that if it be so construed a grave question will arise respecting its constitutional validity. But, as this Court often has held, " a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 401; *United States* v. *Delaware & Hudson Co.,* 213 U. S. 366, 407-408; *Baender* v. *Barnett,* 255 U. S. 224. The question arises, therefore, whether the statute is fairly open to such a construction. There may be room for diverging opinions about the answer, but we think the better view is that it should be in the affirmative.

The course of legislation, as exemplified in § 9 of the Judiciary Act of 1789, §§ 563 (par. 8) and 711 (par. 3) of the Revised Statutes, and §§ 24 (par. 3) and 256 (par. 3) of the Judicial Code, always has been to recognize the admiralty jurisdiction as open to the adjudication of all maritime cases as a matter of course, and to permit a resort to common-law remedies through appropriate proceedings *in personam* as a matter of admissible grace. It therefore is reasonable to believe that, had Congress intended by this statute to withdraw rights of action founded on the new rules from the admiralty jurisdiction and to make them cognizable only on the common-law side of the courts, it would have expressed that intention in terms befitting such a pronounced departure,— that is to say, in terms unmistakably manifesting a purpose to make the resort to common-law remedies compulsory, and not merely permissible. But this was not done. On the contrary, the terms of the statute in this regard are not imperative but permissive. It says " may maintain " an action at law " with the right of trial by

jury," the import of which is that the injured seaman is permitted, but not required, to proceed on the common law side of the court with a trial by jury as an incident. The words " in such action " in the succeeding clause are all that are troublesome. But we do not regard them as meaning that the seaman may have the benefit of the new rules if he sues on the law side of the court, but not if he sues on the admiralty side. Such a distinction would be so unreasonable that we are unwilling to attribute to Congress a purpose to make it. A more reasonable view, consistent with the spirit and purpose of the statute as a whole, is that the words are used in the sense of " an action to recover damages for such injuries," the emphasis being on the object of the suit rather than the jurisdiction in which it is brought. So we think the reference is to all actions brought to recover compensatory damages under the new rules as distinguished from the allowances covered by the old rules, usually consisting of wages and the expense of maintenance and cure. See *The Osceola,* 189 U. S. 158; *The Iroquois,* 194 U. S. 240; *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372. In this view the statute leaves the injured seaman free under the general law—§§ 24 (par. 3) and 256 (par. 3) of the Judicial Code—to assert his right of action under the new rules on the admiralty side of the court. On that side the issues will be tried by the court, but if he sues on the common-law side there will be a right of trial by jury. So construed, the statute does not encroach on the admiralty jurisdiction intended by the Constitution, but permits that jurisdiction to be invoked and exercised as it has been from the beginning.

Criticism is made of the statute because it does not set forth the new rules but merely adopts them by a generic reference. But the criticism is without merit. The reference, as is readily understood, is to the Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, and its

amendments. This is a recognized mode of incorporating one statute or system of statutes into another, and serves to bring into the latter all that is fairly covered by the reference. *Kendall* v. *United States,* 12 Pet. 524, 625; *In re Heath,* 144 U. S. 92; *Corry* v. *Baltimore,* 196 U. S. 466, 477; *Interstate Ry. Co.* v. *Massachusetts,* 207 U. S. 79, 84.

The asserted departure from the restriction respecting uniformity in operation is without any basis. The statute extends territorially as far as Congress can make it go, and there is nothing in it to cause its operation to be otherwise than uniform. The national legislation respecting injuries to railway employees engaged in interstate and foreign commerce which it adopts has a uniform operation, and neither is nor can be deflected therefrom by local statutes or local views of common law rules. *Second Employers' Liability Cases,* 223 U. S. 1, 51, 55; *Baltimore & Ohio R. R. Co.* v. *Baugh,* 149 U. S. 368, 378. Of course that legislation will have a like operation as part of this statute.

A further objection urged against the statute is that it conflicts with the due process of law clause of the Fifth Amendment in that it permits injured seamen to elect between varying measures of redress and between different forms of action without according a corresponding right to their employers, and therefore is unreasonably discriminatory and purely arbitrary. The complaint is not directed against either measure of redress or either form of action but only against the right of election as given. Of course the objection must fail. There are many instances in the law where a person entitled to sue may choose between alternative measures of redress and modes of enforcement; and this has been true since before the Constitution. But it never has been held, nor thought so far as we are advised, that to permit such a choice between alternatives otherwise admissible is a violation

of due process of law. In the nature of things, the right to choose cannot be accorded to both parties, and, if accorded to either, should rest with the one seeking redress rather than the one from whom redress is sought.

At the trial the defendant requested a directed verdict in its favor on the ground that no actionable negligence was shown, but the request was denied. Although approved by the Circuit Court of Appeals, the ruling is complained of here. In view of the concurring action of the two courts, we deem it enough to say that the record discloses sufficient evidence of negligence to warrant its submission to the jury.

The defendant also complains that two requests which it preferred on the subject of assumption of risk were denied. The requests were so framed that, considering the state of the evidence, they would not have conveyed a right understanding of the subject and might well have proved misleading. Their refusal was not error.

*Judgment affirmed.*

Mr. Justice Sutherland did not hear the argument or participate in the decision.