## CHARLES NELSON CO. v. CURTIS.

(Circuit Court of Appeals, Ninth Circuit. October 27, 1924.)

No. 4180.

1. Statutes ⚖️159 — Repeal not implied, unless there is irreconcilable conflict between statutes.

Repeals by implication are not favored, and repeal will not be implied, unless there is irreconcilable conflict between two statutes.

2. Shipping ⚖️203—Limited Liability Act held not repealed, as applied to right of action given seaman.

Limited Liability Act (Rev. St. §§ 4283–4289 [Comp. St. §§ 8021–8027]) was not repealed, in so far as it applied to right of action given seaman, by Merchant Marine Act June 5, 1920, § 33 (Comp. St. Ann. Supp. 1923, § 8337a), and action at law by seaman under latter act may be stayed in proceedings for limitation of liability.

3. Shipping ⚖️209(1) — Proceedings to limit liability of shipowners "admiralty cases."

Proceedings to limit liability of shipowners, under Rev. St. §§ 4283–4289 (Comp. St. §§ 8021–8027), are "admiralty cases," within Const. art. 3, § 2, extending judicial power of United States courts to cases of admiralty.

4. Seamen ⚖️29(5)—Statute giving seaman right of action at law for injuries does not withdraw injuries from operation of maritime law.

Act June 5, 1920, § 33 (Comp. St. Ann. Supp. 1923, § 8337a), giving seaman right to maintain action at law for personal injuries, neither withdraws injuries to seaman from operation of maritime law, nor enables seaman to do so, but brings into that law new rules drawn from another system.

5. Admiralty ⚖️103—Order vacating stay of action at law, pending hearing of petition for limitation of liability, final decree.

Order vacating stay of action at law by seaman, under Merchant Marine Act, § 33 (Comp. St. Ann. Supp. 1923, § 8337a), pending hearing of petition for limitation of liability, under Rev. St. §§ 4283–4289 (Comp. St. §§ 8021–8027), is final decree, and appealable, where it practically terminates proceedings.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; John S. Partridge, Judge.

In the matter of the Petition of the Charles Nelson Company for limitation of liability. From an order (294 Fed. 926) entered on motion of Thomas S. Curtis, vacating order of stay, petitioner appeals. Reversed, and order reinstated.

Farnham P. Griffiths, Jay T. Cooper, and McCutcheon, Olney, Mannon & Greene, all of San Francisco, Cal., for appellant.

Halsey L. Rixford, of San Francisco, Cal., for appellee.

Before GILBERT, MORROW, and RUDKIN, Circuit Judges.

MORROW, Circuit Judge. On August 30, 1922, Thomas S. Curtis, hereinafter referred to as the plaintiff, commenced an action on the law side of the District Court to recover damages from the Charles Nelson Company, the owner of the barkentine Mary Winkleman, for personal injuries alleged to have been sustained by him while serving as a seaman on board said vessel. It was alleged that the injuries were caused solely by the negligence of the defendant, its officers and agents.

The suit was brought under section 33 of the Merchant Marine Act of June 5, 1920 (41 Stat. 1007 [Comp. St. Ann. Supp. 1923, § 8337a]). This statute provides: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply."

Thereafter, and on February 16, 1923, the Charles Nelson Company, claiming to be the owner of the barkentine Mary Winkleman, filed a petition in the District Court for limitation of liability under the act entitled "An act to limit the liability of shipowners and for other purposes," approved March 3, 1851 (9 Stat. 635), as amended and incorporated in sections 4283–4289 of the Revised Statutes [Comp. St. §§ 8021–8027]). The Charles Nelson Company will hereinafter be referred to as the petitioner.

The act of 1851 provided in section 3 of the act (section 8021): "That the liability

of the owner or owners of any ship or vessel * * * for any * * * damage * * * done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner * * * in such * * * vessel, and her freight then pending."

The act was amended by the Act of June 26, 1884 (23 Stat. 53, 57). In section 18 (Comp. St. § 8028) of this amendatory act it was provided: "That the individual liability of a shipowner, shall be limited to the proportion of any or all debts and liabilities that his individual share of the vessel bears to the whole; and the aggregate liabilities of all the owners of a vessel on account of the same shall not exceed the value of such vessels and freight pending. * * * "

The act was further amended by the Act of June 19, 1886, § 4 (24 Stat. 79, 80 [Comp. St. § 8027]), so as to extend the provisions of section 18 of the act of 1884 to all seagoing vessels.

The petitioner, referring to the accident resulting in the injuries for which plaintiff brings his suit at law, alleges:

"That on the 5th day of September, 1921, the said barkentine Mary Winkleman was lying becalmed in the waters adjacent to the island of Hawaii; that on said date, after about 30 fathoms of chain had been paid out, it was discovered that there was a kink in said chain, and in order to free said chain of said kink Paul Raddatz, first mate of said vessel, directed Thomas S. Curtis, who was serving on board said vessel in the capacity of an able-bodied seaman, to go with him to the chain locker in which said chain lay coiled, for the purpose of straightening out or freeing said chain of the kink. The said mate (Raddatz) and the said Curtis thereupon descended to the chain locker, located on a platform in the forepart of said vessel, and proceeded to remove the kink from said chain. To furnish light for this work, a lighted lantern was taken by the mate. That after the work of freeing said anchor chain had been accomplished, and the chain allowed to run free through the hawse pipe, the said Thomas S. Curtis carelessly stepped backward until he stepped off the after end of the said platform upon which the chain locker was located, and fell to the bottom of the vessel's hold, which was empty at that time."

Petitioner alleges that any injury suffered by the plaintiff by reason of his falling from the platform into the hold of the vessel was due solely to his fault, and that the petitioner was not in any wise responsible for such injuries. Petitioner alleges further that the amount of plaintiff's claim greatly exceeds the value of the said barkentine, and that the vessel did not carry any cargo on the voyage on which it was proceeding, and that no freight was pending at the time the voyage terminated.

Petitioner alleges, further, that the injuries to plaintiff, and all damages and injuries, whether of person or property, done, occasioned, and incurred upon the voyage of the barkentine were done, occasioned, and incurred without the consent or privity or knowledge or design or neglect of the petitioner.

Petitioner prayed for an order of appraisement to be had of the value of the said barkentine at the close of the voyage upon which plaintiff met with his alleged injuries, including the amount of freight pending, if any, and that a stipulation or undertaking might be given by the petitioner, with sureties, conditioned for the payment into court of such appraised values, and that a monition issue against the plaintiff and all other persons claiming damages by reason of injuries to persons or property occurring or arising upon said voyage, citing them and each of them to appear before the court and make due proof of their respective claims at the time to be therein named. The regular procedure provided by admiralty rule No. 51 (adopted December 6, 1920, to take effect March 7, 1921) was thereupon followed. The value of the Mary Winkleman was fixed by appraisement at a hearing before a United States commissioner at $1,500, with no freight pending. This appraisement was approved by the court.

Subsequently a court order was entered, requiring all claimants to make proof of their claims against petitioner in the proceedings for limitation of liability, and staying all other proceedings against petitioner, and specifically the suit commenced by plaintiff against the petitioner. Thereafter motion was made by plaintiff's proctor, who appeared specially for that purpose, to have the order of the court staying all proceedings in plaintiff's action at law vacated. Upon a hearing this motion was granted, the court holding that petitioner had no right to have the suit of plaintiff stayed, and that the Limited Liability Act was repealed in so far as it applied to the right of action given a seaman by section 33 of the Merchant Marine Act of June 5, 1920.

[1, 2] There are no words of positive or express repeal in the section, or in the stat-

ute of which it is a part. "It is elementary that repeals by implication are not favored, and that a repeal will not be implied, unless there be an irreconcilable conflict between the two statutes." Petri v. Creelman Lumber Co., 199 U. S. 487, 497, 26 S. Ct. 133, 136 (50 L. Ed. 281); Ex parte United States, 226 U. S. 420, 424, 33 S. Ct. 170, 58 L. Ed. 281.

The act in which the section is found is entitled "An act to provide for the promotion and maintenance of the American merchant marine, to repeal certain emergency legislation, and provide for the disposition, regulation, and use of property acquired thereunder, and for other purposes." The act provides specifically for the repeal of certain acts relating to emergency shipping legislation passed in 1916, 1917, 1918, and 1919. It also provides regulations for other subjects within the general scope of maritime law and practice.

The evident care exercised by Congress in preparing this act in all its numerous details of enactments and repeals carries with it the presumption that it provided for the repeal of all statutes that might expressly or impliedly be deemed in conflict with the legislation contained in the act, and that a statute not so expressly repealed was not deemed to be in conflict with section 33 of the act.

In Panama R. R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748, decided April 7, 1924, the Supreme Court, referring to the course of legislation upon this subject, said: "The framers of the Constitution were familiar with that system," the general maritime law, "and proceeded with it in mind. Their purpose was not to strike down or abrogate the system, but to place the entire subject—its substantive as well as its procedural features—under national control because of its intimate relation to navigation and to interstate and foreign commerce."

The court, further on, again referring to the course of legislation "as exemplified in section 9 of the Judiciary Act of 1789, sections 563 (par. 8) and 711 (par. 3) of the Revised Statutes, and sections 24 (par. 3) and 256 (par. 3) of the Judicial Code," said it "always has been to recognize the admiralty jurisdiction as open to the adjudication of all maritime cases as a matter of course, and to permit a resort to common-law remedies through appropriate proceedings in personam as a matter of admissible grace." From this course of legislation the court draws the conclusion:

"It therefore is reasonable to believe that, had Congress intended by this statute to withdraw rights of action founded on the new rules from the admiralty jurisdiction and to make them cognizable only on the common-law side of the courts, it would have expressed that intention in terms befitting such a pronounced departure—that is to say, in terms unmistakably manifesting a purpose to make the resort to common-law remedies compulsory, and not merely permissible. But this was not done. On the contrary, the terms of the statute in this regard are not imperative but permissive. It says 'may maintain' an action at law 'with the right of trial by jury,' the import of which is that the injured seaman is permitted, but not required, to proceed on the common law side of the court with a trial by jury as an incident. * * * So construed, the statute does not encroach on the admiralty jurisdiction intended by the Constitution, but permits that jurisdiction to be invoked and exercised as it has been from the beginning."

Furthermore, the new admiralty rules now in force and prescribed by the Supreme Court for regulating the practice in the courts of admiralty of the United States were revised, adopted, and promulgated December 6, 1920, to take effect March 7, 1921. This was more than six months after the passage of the Act of June 5, 1920. The presumption is that the Supreme Court had this act before it and was familiar with its provisions when it adopted admiralty rule No. 51.

That rule authorizes the procedure followed by the court in this case, including the making of "an order for a monition against all persons claiming damages of said petitioner by reason of injuries to persons or property occurring or arising upon the voyage of said barkentine Mary Winkleman," citing them " * * * to appear before the court and make due proof of their respective claims. * * * " The court made the further order to restrain the further prosecution of all and any suit or suits against said owner or owners in respect to any such claim or claims, including plaintiff's claim. Subsequently this last restraining order of the court was vacated by a second order of the court. The question is: Was the District Court right in vacating its previous order, made in pursuance of the Limitation of Liability Act and revised admiralty rule No. 51, on the ground that section 33 of the Act of June 5, 1920, had re-

pealed the Limitation of Liability Act and admiralty rule No. 51 as revised?

It was the opinion of the judge of the District Court that the right of a seaman who has suffered a personal injury in the course of his employment to elect to maintain an action for damages at law under section 33 of the Act of June 5, 1920, is absolutely inconsistent with the right of the owner of the vessel to proceed under the Limitation of Liability Act to limit his liability against a judgment under that section to the value of the vessel and the then pending freight; that in sustaining the Limitation of Liability Act in such a case the injured seaman would not have the right of an "election" to "maintain" his action for damages at law with the right of trial by jury. The court was of the further opinion that, in using the words "election" and "maintain," Congress must have intended to give the injured seaman a right to recover his damages against the owner in any event, and not to leave him to take his chances with other creditors in the proceeds or value of the ship. The court accordingly held that section 33 of the Act of June 5, 1920, repealed by implication the provisions of the Limitation of Liability Act, so far as the same is inconsistent with the provisions of that section.

A satisfactory construction of the statute, standing alone, is possibly not without some difficulty, as appears from the opinion of Judge Learned Hand in The El Mundo (D. C.) 294 F. 577, the opinion of Judge Garvin in The Edward (D. C.) 294 F. 686, and the certificate of questions from the Circuit Judges of the Second Circuit (Judges Rogers, Hough, and Mayer) to the Supreme Court on May 28, 1923, in the case of The Edward (C. C. A.) 291 F. 1017; and the case of The Scow 84-H (C. C. A.) 296 F. 427, in the same court, decided by Rogers, Manton, and Mayer, on December 17, 1923, where, notwithstanding the previous questions certified to the Supreme Court, the Circuit Court of Appeals sustained a petition for the limitation of the liability of the owner of the scow against an action at law in the state court for damages for personal injury. Finding no negligence on the part of the owner of the scow, the court in that case directed a decree exempting the owner from all liability.

We think, however, a careful consideration of the history of the law upon the subject and its construction by the courts, particularly the recent decision of the Supreme Court in Panama R. R. Co. v. Johnson, 264

U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748, on April 7, 1924, will give us a satisfactory understanding of the meaning of the section and the purpose of Congress in its enactment.

[3] Section 2 of article 3 of the Constitution extends the judicial power of the United States to "all cases of admiralty and maritime jurisdiction." Proceedings to limit the liability of shipowners are admiralty cases. Oregon R. & Nav. Co. v. Balfour, 179 U. S. 55, 21 S. Ct. 28, 45 L. Ed. 82.

"The subject [limitation of liability] is one pre-eminently of admiralty jurisdiction. The rule of limited liability prescribed by the Act of 1851 is nothing more than the old maritime rule administered in courts of admiralty in all countries except England, from time immemorial; and if this were not so, the subject-matter itself is one that belongs to the department of maritime law." Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U. S. 578, 593, 3 S. Ct. 379, 389 (27 L. Ed. 1038).

Section 9 of the Act of September 24, 1789 (1 Stat. 73, 77), provided that the District Courts should "have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction * * * saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it * * * and the trial of issues in fact, in the District Courts, in all causes except civil causes of admiralty and maritime jurisdiction, shall be by jury."

"The meaning of the clause in the ninth section of the Judiciary Act of 1789, saving to suitors in all cases a common-law remedy when the common law is competent to give it, is that in cases of concurrent jurisdiction in admiralty and at common law the jurisdiction in the latter is not taken away." Syllabus in Waring v. Clarke, 46 U. S. (5 How.) 440, 441, 460 (12 L. Ed. 226). In Industrial Accident Comm. v. Nordenholt Co., 259 U. S. 263, 272, 42 S. Ct. 473, 474 (66 L. Ed. 933, 25 A. L. R. 1013), the Supreme Court said:

"When an employee, working on board a vessel in navigable waters, sustains personal injuries there, and seeks damages from the employer, the applicable legal principles are very different from those which would control if he had been injured on land while unloading the vessel. In the former situation the liability of employer must be determined under the maritime law; in the latter, no general maritime rule prescribes the liability, and the local law has always been applied. The liability of the employer for

damages on account of injuries received on shipboard by an employee under a maritime contract is matter within the admiralty jurisdiction; but not so when the accident occurs on land."

A seaman who has suffered a personal injury in the course of his employment has always had, therefore, an election since this original Judiciary Act of 1789 to maintain an action at law to recover damages for such injury with the right of trial by jury, the compensatory damages, in admiralty, having relation to the wages of the injured seaman to the end of the voyage and the expense of his maintenance and cure for a reasonable time thereafter. To this right of indemnity has been added by section 33 of the Act of June 5, 1920, the further right to invoke in such action "all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees." The reference is to the Employers' Liability Act of April 22, 1908, 35 Stat. 65 (Comp. St. §§ 8657–8665), and its amendments.

In Southern Pacific Co. v. Jensen, 244 U. S. 205, 215, 216, 37 S. Ct. 524, 528 (61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900) the Supreme Court said: "Considering our former opinions, it must now be accepted as settled doctrine that in consequence of these provisions, Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country."

In Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 382, 38 S. Ct. 501, 503 (62 L. Ed. 1171) the Supreme Court said: "Under the doctrine approved in Southern Pacific Co. v. Jensen, no state has power to abolish the well recognized maritime rule concerning measure of recovery and substitute therefor the full indemnity rule of the common law. Such a substitution would distinctly and definitely change or add to the settled maritime law; and it would be destructive of the 'uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the states with each other or with foreign states.'"

The court said further: "The language of the section discloses no intention to impose upon shipowners the same measure of liability for injuries suffered by the crew while at sea as the common law prescribes for employers in respect of their employees on shore." In other words, a seaman could not recover at common law for injuries by negligence on the high seas.

[4] To avoid the objection that no state has the power to change or add to the maritime law, section 33 of the Act of June 5, 1920, was passed, placing the authority in Congress, where the power to add to and amend that law is lodged, that it may be uniform in its operation and prevail throughout the country. Panama R. R. Co. v. Johnson, supra. That was an action at law under section 33 to recover damages for personal injuries received by a seaman upon a vessel at sea. The court explains the purpose of the statute as follows:

"Rightly understood, the statute neither withdraws injuries to seamen from the reach and operation of the maritime law, nor enables the seamen to do so. On the contrary, it brings into that law new rules drawn from another system, and extends to injured seamen a right to invoke, at their election, either the relief accorded by the old rules or that provided by the new rules. The election is between alternatives accorded by the maritime law as modified, and not between that law and some nonmaritime system."

There is no suggestion in that case that the maritime law is in any respect repealed or even modified. We therefore return to that law for direction as to procedure.

The case of The Benefactor, 103 U. S. 239, 26 L. Ed. 351, was a case of collision off the coast of New Jersey. A limitation of liability was involved. Mr. Justice Bradley, speaking for the Supreme Court, points out with his usual clearness the paramount character of the statute providing for the limitation of liability of shipowners to the extent and under the circumstances therein stated.

Upon a hearing the District Court adjudged the steamer to be at fault and assessed the damages to libelants and interveners at $61,810.49. The steamer had previously been appraised, and released upon stipulation for the value of $40,000. The court thereupon directed the claimants and their sureties to pay into the registry of the court the amount of the stipulated value of the vessel and for costs, namely, $500 for costs and $40,000 for the appraised value of the steamer, and in default of an appeal the clerk was directed to distribute the proceeds among the libelants in proportion to their recoveries.

Nearly two years later the owners of the steamer petitioned the court for limitation of their liability under section 4283 of the

Revised Statutes, alleging that "the loss and damages were without their privity or knowledge." They also petitioned for a final decree that the amount of the stipulated value be distributed pro rata among the claimants, and that upon payment thereof the steamship and the petitioners be forever discharged from further liability, and that an order be made restraining the libelants in the other suits from further prosecuting the same. The District Judge denied the motion for a restraining order, and dismissed the petition for limitation of liability. Upon appeal to the Circuit Court this decree was affirmed. The ground of dismissal relied on by the District Court, and adopted by the Circuit Court, was that the petition came too late, inasmuch as it was not filed until after a trial of the cause upon its merits and a final decree thereon.

On appeal to the Supreme Court, Mr. Justice Bradley, in his opinion, refers to the ruling of the District Judge, and says: "He [the District Judge] supposes that this right to contest the case on the merits at the same time and in the same proceedings that a limited liability is claimed implies that such proceedings must be instituted before the case has been tried on its merits; because a second trial of the same matter, after it has once been adjudicated, will not be deemed to have been contemplated by the rule [56]. In supposing that a second trial of the merits, between the same parties, was not contemplated by the rule, the judge was correct. But it was certainly not the intention of the Admiralty Rules to preclude a party from claiming the benefit of a limited liability after the trial of the cause of collision."

After explaining the origin of the admiralty rule on the subject and the procedure therein provided, the court said: "The amount recovered, whether before the limitation proceedings are commenced or afterwards, and whether in the court of first instance or an appellate court, will stand as the recoverer's basis for pro rata division when the condemned fund is distributed. In all other respects the proceedings for obtaining a limitation of liability may proceed in ordinary course. * * *"

We come now to the conclusion of the court applicable to the question we have under consideration in this case. The court says: "But so far as the petition sought a limitation of the owners' liability to the value of the ship and freight, it was free from objection and ought to have been sustained, and the libelants and interveners ought to have been restrained by order of the court from collecting or attempting to collect or enforce their respective decrees, whether obtained in that court or in the court of appeal, in any other manner than by the pro rata distribution of the fund standing by stipulation in place of the ship and freight."

Upon a motion to modify the judgment and mandate, the court, by Mr. Justice Bradley, said further: "A question has been made whether, under our decisions in these cases, proceedings ought to be stayed on the decree of the respondents against the steamship Benefactor, her claimants and stipulators, until the determination of the proceedings on the petition for limited liability. We have no hesitation in saying that they ought to be so stayed. Our opinion was very clearly expressed, in deciding the limited liability case, that the petitioners were not too late to obtain relief, and that proceedings to collect any decrees rendered against them should be stayed. We held that such decrees would have the effect of res judicata on the question of the liability of the steamship, and as to the amount of damage sustained by the libelants, and that the amount of the decrees would stand as the basis for determining the pro rata share of the libelants in the common fund to be distributed on the termination of the limited liability proceedings."

In the case of The San Pedro, 223 U. S. 365, 371, 32 S. Ct. 275 (56 L. Ed. 473, Ann. Cas. 1913D, 1221), the Supreme Court held that "the very nature of the proceeding [limitation of liability] is such that it must be exclusive of any separate suit against an owner on account of the ship. The monition which issues when the vessel has been surrendered, and a stipulation entered into to pay the value into court, requires every person to assert his claim in that case."

The right of the shipowner to proceed under the maritime law to limit his liability to the value of the vessel is therefore not subordinate to the right of the injured seaman to maintain an action at law to recover damages for his injuries. These rights are independent and in some respects concurrent. But with respect to the final decree, limiting the liability of the shipowner, that law is paramount.

It follows that, unless we hold with the court below that section 33 of the Merchant Marine Act repealed so much of the Limitation of Liability Act as would require the injured seaman to come into the court of admiralty and prove his claim for damages, we must sustain the right of the shipowner

to proceed in the limitation of liability proceedings. This is clearly the law as declared in Panama Railroad Co. v. Johnson, supra.

[5] Appellee has made a motion to dismiss this appeal, or in the alternative transfer the case to the United States Supreme Court. The motion is made on the ground that the order appealed from is not a final decree. The order vacated a previous order staying plaintiff's action at law against the petitioner. The previous order was made and entered in accordance with the provision of section 4283 of the Revised Statutes, limiting the liability of shipowners, and rule No. 51 prescribed by the Supreme Court regulating the practice of courts of admiralty in such proceedings. The vacating order was made upon the ground that section 33 of the Act of June 5, 1920, repealed by implication the Limitation of Liability Act. This was in effect a final decree in that court upon that question, and practically terminated the proceedings brought by the petitioner to limit its liability under the act.

. As said by the Circuit Court of Appeals of the Fourth Circuit in the case of The Attualita, 238 Fed. 909, 910, 152 C. C. A. 43, 44, if this order "remains unreversed, nothing else can be done in the court below which would be worth doing." This would be the situation of the petitioner in this case if the order stands. The court said further: "The question whether a decree is final and appealable is not determined by the name which the court below gives it, but is to be decided by the appellate court on consideration of the essence of what is done by the decree."

To the same effect is the case of The Pesaro, 255 U. S. 216, 217, 41 S. Ct. 308 (65 L. Ed. 592) where it was objected that the decree did not dismiss the libel, and the court said: "That it does not formally do so is true, but this is not decisive. The suit is in rem—is against the ship. The decree holds for naught the process under which the ship was arrested, declares she is not subject to any such process and directs her release—in other words, dismisses her without day. Thus the decree ends the suit as effectually as if it. formally dismissed the libel. Obviously, therefore, it is final."

We are of the opinion that the case is one for our decision. We are of the further opinion that the order of the District Court, dated January 3, 1924, vacating the previous order of the court, dated November 3, 1923, staying the plaintiff's action at law against the petitioner, was in effect a final decree,

and, being erroneous, must be reversed; the order of November 9, 1923, must be reinstated, and further proceedings had in accordance with the Limitation of Liability Act.