## NEWPORT NEWS SHIPBUILDING & DRY DOCK CO. v. WATSON.

Circuit Court of Appeals, Fourth Circuit.
June 3, 1927.

No. 2597.

1. Seamen ⟂29(2)—Gasoline launch, employed about shipyard, held not unseaworthy, nor unsafe place to work, because of coping instead of guard rail around its deck.

A gasoline launch, employed only in the waters of a shipyard, to carry heavy hawsers to various points of attachment about the plant on piers or vessels, held not unseaworthy nor an unsafe place to work, because around its deck it had a coping several inches high, instead of a guard rail, which would have interfered with handling of the hawsers.

2. Seamen ⟂29(3)—Negligence of engineer of motor launch held to render employer liable for drowning of fellow employee (Merchant Marine Act 1920, § 33, amending Act March 4, 1915, § 20 [Comp. St. § 8337a]).

A motor launch, in charge of its engineer, who was the only operator on board, was carrying a fellow employee to a derrick scow, and when the launch bumped against the scow the passenger fell overboard and was drowned. Held, that the engineer was negligent, in that, when the launch struck the scow, he had his back turned, and also in failing to get the launch in motion in time to rescue the drowning man, and that his negligence rendered the employer liable for the death, under Merchant Marine Act 1920, § 33, amending Act March 4, 1915, § 20 (Comp. St. § 8337a).

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Action at law by James Watson, administrator of the Estate of Junius Watson, deceased, against the Newport News Shipbuilding & Dry Dock Company. Judgment for plaintiff, and defendant brings error. Affirmed.

E. M. Braxton and R. M. Lett, both of Newport News, Va. (F. H. Skinner, of Newport News, Va., on the brief), for plaintiff in error.

John V. Groner, of Norfolk, Va. (Groner & Gary, of Norfolk, Va., on the brief), for defendant in error.

Before PARKER and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. This is an action at law, brought in the District Court of the United States for the Eastern District of Virginia by James Watson, administrator of the estate of Junius Watson, deceased, against the Newport News Shipbuilding & Dry Dock Company, a corporation, under the act of Congress known as the Merchant Marine Act of June 5, 1920, amending the Act of March 4, 1915 (U. S. Comp. St. § 8337a).

The defendant below is a corporation operating a shipbuilding plant located on the James river in the city of Newport News, Va., where it has many piers extending into the river. Between these piers are slips, into which vessels undergoing repairs are brought while work is being done on them. The defendant also operates a derrick scow, 72 feet long and 36 feet wide, which is moved from place to place about its plant by means of lines or hawsers. These lines are fastened to either a pier or vessel, and, by means of a steam winch aboard the scow, the scow is pulled to the desired position.

The defendant used a gasoline launch 40 feet long and 10 feet wide for the purpose of carrying lines about its plant. This launch had a hand rail around its cabin or house, and a railing or coping several inches high around its outer deck, which outer deck extended forward of the house 5 or 6 feet. The launch was manned by an engineer, who had been operating a launch for 21 years and this particular launch for about 7 years. The decks of the launch and the scow were about the same height above the water.

The deceased, Junius Watson, had been working for the defendant on the derrick scow for about 6 months before the happening complained of, and it was frequently his duty to handle the lines carried by the launch from the scow to various points, and when this work was done he would be returned to his place of employment on the scow. The deceased was a young, active, colored man, in his twenty-first year, and apparently of normal intelligence.

On March 10, 1924, the scow was to be moved, and deceased was directed to carry the lines and fasten them at various points. The engineer and the deceased were the only persons on the launch. There were several people working on the scow. This work of carrying the lines was finished, and the launch was returning Watson to the scow, when, at about the time of the landing of the launch against the scow, Watson was thrown or fell into the water and was drowned. Efforts were made to save him, and life preservers were thrown him, but without avail.

The administrator of Watson's estate brought this action, charging the defendant company with negligence, and on the trial a stipulation was entered into, waiving a jury and leaving all matters of fact and law to the court. The court heard the case and gave judgment against the defendant for $1,500.

The plaintiff relies chiefly on three points: First, negligence of the company in failing to properly equip the launch; second, negligence in improperly manning the launch; and, third, negligence of the operator of the launch. These points will be considered in the order named.

[1] It is contended that the launch was not properly equipped, in that it was not seaworthy, because it had no hand or guard rail around its outside deck. Bouvier defines seaworthiness as being "the sufficiency of the vessel in materials, construction, equipment, officers, men, and outfit for the trade or service in which it is employed." The launch in this case was employed in carrying heavy lines or hawsers about the shipyard, and it was equipped with a hand rail around its deck house and a coping around the outer deck a few inches high. It can readily be seen that a hand railing around the outer deck would greatly interfere with the handling of the heavy lines sought to be carried. Within the protected waters of the shipyard, where the launch plied (it did not go on protracted voyages or into rough water), it would seem that the lack of an outer guard rail did not render the launch unseaworthy or unfit for the service in which it was employed. Under the circumstances it was a "reasonably safe place to work." The case of Zinnel v. U. S. S. B. E. F. Corp. (C. C. A.) 10 F.(2d) 47, relied upon by the plaintiff, involved the absence of a sufficient guard rail on a ship making an ocean voyage. An entirely different case from the one under consideration.

As to whether or not there was any negligence in improperly manning the launch depends on whether the engine and steering apparatus were so installed that the engineer could control the engine without turning away from the wheel at critical moments,

such as the instant of making a landing. Whenever a line was to be carried, another man was put on the launch to handle the line, leaving the engineer free to operate the launch. This was a one-man launch according to the evidence. One witness testified that the engineer could control the engine without turning away from the wheel, but that he would have to "stretch out" to do it. In any event, the evidence is clear that at the moment that the deceased fell into the water the engineer had his back turned to the bow of the launch, where the deceased was standing, at a time when the operator should have been watching the point of contact between the launch and the scow. The engineer did not turn to look forward until he heard a cry, and when he did look he was, according to his own testimony, from 25 to 50 feet away from the deceased, who was then struggling in the water.

[2] This brings us to the third point, as to whether or not the launch operator was negligent. It is admitted that in this case the common law rule that exempted the employer from responsibility for the negligence of a fellow employee of the deceased does not apply. Federal Employers' Liability Act of April 22, 1908, as amended by Act of April 5, 1910 (Comp. St. §§ 8657–8665); Act of March 4, 1915 (Comp. St. § 8337a); Act of June 5, 1920 (Comp. St. Ann. Supp. 1923, §§ 8146¼–8146¼t). Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. A comprehensive discussion of these acts will be found in Panama R. Co. v. Johnson (C. C. A.) 289 F. 964, affirmed by the Supreme Court in Panama R. Co. v. Johnson, 264 U. S. 375; 44 S. Ct. 391, 68 L. Ed. 748.

Negligence of the operator of the launch would therefore render the defendant liable. The evidence is vague as to what caused the deceased to fall into the water. No witness seems to have seen him at that exact moment. The engineer of the launch should have been looking forward, but, by his own admission, he had turned and was looking over the stern. On this point the engineer testified as follows:

"When the fender of the launch bumped the derrick, the launch was still in reverse, and, as she bumped, I thought Junius stepped off. I was not looking, since I had my back to Junius, and the launch backed out 25 or 50 feet, before I heard some one call, 'catch that man.' Looking out, I saw Watson overboard. I rushed my motor into gear to come ahead, but rushed it too quickly, and she

choked, and I thought before I could prime all four cylinders to go ahead, to throw him a life preserver until I could get the launch in motion. The life preserver came about 2 feet of Watson, with his face towards the launch. He didn't pay any attention to that, so I got another one, which being thrown went a little further away, probably 4 or 5 feet, because the launch was drifting off. Then finally Watson turned away and started towards Pier 2 dog fashion. I then ran down and started the motor, and just as the launch got directly over Watson he went down."

It seems clear that, had the engineer been looking forward, as he should have been, the deceased would either never have fallen into the water, or would have been easily rescued after the fall. Had the engineer not carelessly killed his engine in attempting to go forward, it also seems very probable that Watson could have been saved.

The trial of this case by a jury having been waived by stipulation of the parties, the finding of the trial judge upon the facts is entitled to the same weight and has the same effect as the verdict of a jury. The trial judge found that there was no contributory negligence on the part of the deceased, and there is nothing in the record to justify a reversal of that finding.

If the engineer of the launch was negligent at the critical moment of the landing against the scow the doctrine of assumption of risk relied on by defendant's counsel would not apply. It seems clear that the engineer was negligent and that by reason of his negligence the defendant company was rendered liable.

The judgment of the trial court is therefore affirmed.