Sarachan, J.
The plaintiff is the administrator of the estate of George D. Killip who was his father. On August 21, 1955, George D. Killip entered the Rochester General Hospital as a patient for the purpose of having a tumor removed from his shoulder. The operation for that purpose was performed on the morning of August 22, 1955.
On the morning of August 23,1955, the plaintiff was informed that his father had sustained injuries consisting of multiple fractures of the ribs and of the right femur. George D. Killip died on August 27,1955.
The only information that the plaintiff had with regard to the cause of the injuries of the deceased and his subsequent death is contained in the death certificate filed by the Coroner of Monroe County, stating in substance that on August 22,1955, at 6:45 a.m. George D. Killip sustained the injuries when he jumped from a second-story window in the Rochester General Hospital “ while temporarily insane.”
*350 The plaintiff seeks the examination of the hospital employee^ and an examination of the hospital records under the provisions of section 288 of the Civil Practice Act, for the purpose of enabling him to prepare a complaint.
The plaintiff is met with the objection that, under the provisions of section 352 of the Civil Practice Act, much or most of the information which the plaintiff seeks is privileged and that the administrator of the estate of the deceased cannot, under the provisions of section 354, waive that privilege.
The significant portion of section 354 reads as follows: “ But a physician or surgeon or a registered professional or licensed practical nurse, upon the trial or examination, may disclose any information as to the mental or physical condition of a patient Who is deceased, which he acquired in attending such patient professionally, except such confidential communications as would tend to disgrace the memory of the patient and such facts as would tend to disgrace his memory, when the provisions of section three hundred and fifty-two have been expressly waived on such trial or examination by the personal representatives of the deceased patient ”.
Prior to the amendment contained in chapter 466 of the Laws of 1955 (eff. April 18, 1955), which amended section 354 of the Civil Practice Act, the Court of Appeals had stated that the right of the personal representative of a deceased to waive such privilege was very much limited. In the case of Matter of Coddington (307 N. Y. 181) the majority of the court held that the words, “ confidential communications,” contained in section 354 prior to the amendment, restricted a physician from testifying as to any matters regarding the deceased except such matters as he could observe as a layman. Judge Van Vookhis, in his dissent, indicated that such restriction was not warranted by the words of the statute.
The majority of the court, however, felt that it was properly interpreting the intent of the Legislature and went on to say at page 193: ‘ ‘ If the court erred in interpreting the legislative intent, or if a different policy is to be declared or a change made, the Legislature must so ordain.” In response to that suggestion of the court, apparently, the Legislature enacted the amendment contained in chapter 466 of the Laws of 1955.
However, the defendant here maintains that to permit an examination of the employees of the hospital and of the hospital records would be to disclose such information “ as would tend to disgrace the memory of the patient ”.
*351 The sole basis for this objection presented to this court is the death certificate, filed by the Coroner of Monroe County, which stated that the deceased jumped from the second-story window of the hospital while temporarily insane.
This death certificate, of course, does not have probative value so far as what happened in the hospital is concerned since it is obviously based on hearsay. Moreover, this court is not convinced that even if the testimony of the witnesses sought to be examined and the hospital records should disclose that the deceased was temporarily insane, that would “ tend to disgrace the memory of the patient
For a long time, mental disturbance was considered something disgraceful. At one time insane people were treated as criminals and incarcerated. Then came a period when insanity was no longer regarded as a crime and special institutions were erected for confining the insane. Nevertheless, insanity was still considered disgraceful and something to be concealed.
This court is convinced that we are now in a more enlightened age. Tremendous forward steps have been made in the study of psychology, psychiatry, and psychoanalysis. By and large, people are today satisfied that mental illness is no different from physical illness; that except in certain instances mental illness may be cured; and that there is no more disgrace in being mentally ill than there is in suffering a heart-ailment, poliomyelitis, or cancer.
Courts, while recognizing the great desirability of the principle of stare decisis, must be realistic and look upon the world as it is — and not as it was. A generation ago, the use of tobacco and cosmetics by females was considered disgraceful. Today, a young woman who uses no cosmetics is generally looked upon as a bit odd.
The court has, therefore, reached the conclusion that even if there were any legal evidence before the court that the examinations applied for would tend to show that the deceased was temporarily insane, such evidence would not “ tend to disgrace the memory of the patient ”.
Motion is granted, with $10 costs.