Rachael REID, Executrix of the Estate of Charles G. Reid, Jr., Deceased,

v.

MOORE–McCORMACK LINES, INC.

No. 69 Civ. 1259.

United States District Court
S. D. New York.

Jan. 15, 1970.

Fuller, Hopkins, Lawton & Taussig, by Walter Hopkins, New York City, for plaintiff.

Browne, Hyde & Dickerson, by John H. Reilly, Jr., New York City, for defendant.

## OPINION

TYLER, District Judge.

Plaintiff is the widow and executrix of the captain of one of defendant's ships. While aboard a vessel of defendant and, it is said, in the grip of an uncontrollable impulse, decedent committed suicide by leaping through a port in his quarters into the sea. Plaintiff sues under the Jones Act, 46 U.S.C. § 688, to recover for this death and here moves under Rule 37(a), Fed.R.Civ.P., for an order directing the ship's doctor and defendant not to raise a physician-patient privilege when the deposition of the doctor is resumed.

Briefly, the doctor, an employee of defendant, raises the claim of privilege, by reference to Rule 26(b), Fed.R.Civ. P.[1] and through it to the law of the State of New York as the authority by which the scope of privilege is to be determined. In particular, defendant points to New York C.P.L.R. § 4504(c), which establishes an apparently unwaivable prohibition on doctors or nurses disclosing "information which would tend to disgrace the memory of the decedent."[2]

The first problem is to interpret the meaning of privilege in Rule 26. The Federal Rules do not spell out the limits of federal privilege; the usual source for determining the scope of privilege has been state law. Massachusetts Mutual Life Ins. Co. v. Brei, 311 F.2d 463 (2d Cir. 1962); Engl v. Aetna Life Ins. Co., 139 F.2d 469 (2d Cir. 1943). The underlying policy reason for turning to state law was succinctly put in *Massachusetts Mutual Life*:

> "The patient-physician privilege is more than a rule of procedure since it goes to relationships established and maintained outside the area of litigation and 'affect[s] people's conduct at the stage of primary activity and should therefore be classified as substantive or quasi-substantive.'" Quoting Hart & Wechsler, The Federal Courts and the Federal System, 678 (1953). At 466.

■ *Massachusetts Mutual Life* was a diversity case; therefore, any matter categorized as substantive would be governed by state law. The present case arises under the Jones Act, it is thus a case presenting a federal question and one governed by an act which historically has exhibited a strong policy of uniform national enforcement. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S. Ct. 202, 98 L.Ed. 143 (1953); Garrett v. Moore-McCormack & Co., Inc., 317 U.S. 239, 243, 63 S.Ct. 246, 87 L.Ed. 239 (1942); Panama R. Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924). Under uniform national legislation, any truly substantive matter would have to be uniformly interpreted and

1. "Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, * * *."

2. "A physician or nurse shall be required to disclose any information as to the mental or physical condition of a deceased patient privileged under subdivision (a), except information which would tend to disgrace the memory of the decedent, either in the absence of an objection by a party to the litigation or when the privilege has been waived * * *." C.P.L.R. § 4504(c)

governed by federal rather than state law. If that analysis is accepted, since the physician-patient privilege did not exist at common law, 8 Wigmore on Evidence (McNaughton Revision) § 2380, and there is no federal statute creating such a privilege, there would be no physician-patient privilege in cases, such as the present one, which arise under schemes of national legislation.

■ Such a result would produce patent absurdities. One does not turn to his doctor and conduct his consultations, speculating the while on whether or not he should make state-protected disclosures because he never expects to be involved in a suit under national legislation where they could be revealed. The vast bulk of physician-patient contacts and disclosures do not take place in a setting dominated by litigation of any sort, much less in circumstances where the patient can calculate whether he has a state or federal cause of action. Thus, if state policies favoring disclosure between physician and patient are to have vitality and power, they should govern in both state and federal actions as long as federal legislation does not itself enunciate a policy on the physician-patient privilege. The thrust of the circuit court's reasoning in *Massachusetts Mutual Life* therefore pushes beyond diversity cases and holds good for cases arising under federal legislation. Federally, privilege is perhaps best thought of as a procedural rule which looks outward to the substantive law of the appropriate local jurisdiction to receive its concrete form in a given case.

There remains the task of determining what body of substantive law should govern the scope of the privilege in this case. The defendant urges the court to turn to the law of New York as the substantive law governing the jursdiction in which the forum sits. Though the point has not been canvassed in the briefs, defendant may perhaps argue further that the jurisdictional requirements of the Jones Act limited the plaintiff to bringing this action in a judicial district in New York State and that, therefore, plaintiff on entering his contract with defendant accepted the law of New York as governing and must now be bound by it.

Since privilege provisions primarily shape conduct beyond the arena of litigation, the appropriate body of law to turn to are those substantive rules under which the parties conducted their relations before the litigation. That body of substantive law was the law of admiralty and not the law of New York.

Clearly, evidence as to the health and mental competence of a ship's captain might be called for in non-Jones Act cases brought in almost any judicial district in which a port is located. It can hardly be contended that the law of privilege of each of those jurisdictions governs the scope of available privilege between the members of the crew and the ship's doctor. The body of substantive law with the predominant contacts to the facts laid out in this case is the law of admiralty. That conclusion is dictated both by common sense and by the historic policy of uniform national enforcement of the Jones Act, which seeks to have the substantive rights and policies of admiralty enforced in all courts trying Jones Act cases. Garrett v. Moore-McCormack & Co., Inc., *supra*; 2 Norris, The Law of Seamen, § 677. I have found no suggestion that admiralty law recognizes a physician-patient privilege which would allow the ship's doctor in this case to avoid testifying.

■ While I believe admiralty to be the proper body of substantive law to consult, I also rule against defendant if New York law is deemed the proper susbtantive law. The New York statute prohibits disclosure of "information which would tend to disgrace the memory of the decedent." There is little New York case law interpreting that statutory phrase, but one of the few cases does come surprisingly close to the

case at bar. In Killip v. Rochester General Hospital, 1 Misc.2d 349, 146 N.Y. S.2d 164 (Sup.Ct. Monroe Co. 1955), while in the care of defendant, plaintiff's decedent, according to the death certificate, jumped from the second story window of the hopsital while temporarily insane. That episode resulted in injuries to the decedent and his subsequent death. The prohibition of C.P.L.R. § 4504(c) was raised and the court commented:

> "By and large, people are today satisfied that mental illness is no different from physical illness; that except in certain instances mental illness may be cured; and that there is no more disgrace in being mentally ill than there is in suffering a heart ailment, poliomyelitis, or cancer." 146 N.Y. S.2d at 167.

The court ruled that evidence of temporary insanity would not tend to disgrace the memory of the deceased.

I agree with the ruling of the state court in *Killip* and find both in light of that ruling and by whatever residual powers for the interpretation of state-enacted privileges remains in a federal court, *see* 4 Moore's Federal Practice, 26.23(9), that there has been no showing here of special facts, the disclosure of which would tend to disgrace the memory of the dead. Therefore, any assertion of the prohibition contained in C.P. L.R. § 4504(c) is improper.

In sum, I believe the correct analysis of the legal problem of determining the scope of the physician-patient privilege in this Jones Act case is to look outward from Rule 26, Fed.R.Civ.P., to the substantive body of admiralty law. I find no physician-patient privilege in that law. On those grounds, plaintiff's motion is granted. Even if it would be correct to look to New York State law, I find nothing here tending to disgrace the memory of the late Captain Reid; hence on that ground I would grant plaintiff's motion. It is so ordered.