UNITED STATES of America, Plaintiff–Appellee,

v.

Ronald M. BLAHA and Lyle Morgan, Defendants.

Appeal of Lyle MORGAN, Defendant.
Docket 89–6053.

United States Court of Appeals,
Second Circuit.

Argued Nov. 6, 1989.

Decided Nov. 8, 1989.

Faith O'Malley, Torts Branch, Civ.Div., U.S. Dept. of Justice, New York City (Stuart E. Schiffer, Dennis C. Vacco, Janis G. Schulmeisters, of counsel), for plaintiff-appellee.

Henry E. Wyman, (Margery A. Miller, Buffalo, N.Y. of counsel), for defendant-appellant.

Before TIMBERS and WINTER, Circuit Judges, and LEISURE, District Judge.*

* The Hon. Peter K. Leisure, United States District Judge for the Southern District of New York, sitting by designation.

WINTER, Circuit Judge:

This action was brought by the United States under the Wreck Act, 33 U.S.C. §§ 409–415 (1982 & Supp. V 1987) ("Wreck Act") to recover expenses incurred in its removal of a barge obstructing the Niagara River. Defendant Lyle Morgan appeals from Judge Arcara's denial of his motion to limit his liability under the Limitation of Vessel Owner's Liability Act, 46 U.S.C. §§ 181–189 (1982) ("Limitation Act").

For purposes of this appeal, it is undisputed that on August 7, 1986, one Ronald M. Blaha, then owner and operator of Barge No. 45 and the tug Ruth B., attempted to navigate the vessels through the piers of the Peace Bridge, an international bridge spanning the Niagara River between Buffalo, New York and Fort Erie, Ontario, Canada. The vessels collided with the ice knife protruding from one of the piers. The Ruth B. capsized and drifted downstream, eventually sinking, while Barge No. 45 remained impaled upon the ice knife and eventually became partially submerged in that position.

On August 26, 1986, Blaha executed an agreement in which he "abandoned ... his right, title and interest [in the vessels], if any, to ... Lyle Morgan." Morgan's brief states that the consideration for this transfer was $1. Because the partially submerged wreck of the barge had been declared a hazard and obstruction to navigation by the United States Coast Guard and the Army Corps of Engineers, Morgan wrote to Colonel Daniel R. Clark of the Buffalo District of the Corps on August 29 to inform him of the change in ownership and to request time to submit a plan for his salvage and removal of the wrecked vessels. Morgan was given until September 13 to submit a plan, but on September 12 he notified Colonel Clark by letter that he was abandoning both the tug and the barge.

The Corps of Engineers and the United States Navy thereafter contracted for the removal of Barge No. 45 from the ice knife of the bridge. The removal cost some $5.5 million. Subsequently, the United States brought this action against Blaha and Morgan, jointly and severally, pursuant to Sections 409, 411, 412, 414 and 415 of the Wreck Act, to recover all expenses incurred in the removal plus interest and costs.

On September 15, 1988, Morgan filed a motion to limit his liability to the $1 he paid for the barge under Section 183(a) of the Limitation Act.[1] The motion was denied by Judge Arcara. Morgan appeals from that decision.

Morgan asserts that the district court erred in ruling that the Limitation Act, a part of Title 46 relating to Shipping, was not intended to relieve obligations or responsibilities arising under the Wreck Act, a part of Title 33 relating to Navigation and Navigable Waters. We disagree and affirm.

The Limitation Act provides that the liability of a shipowner stemming from a mishap that is "done, occasioned, or incurred, without the privity or knowledge of such owner" will not exceed the value of the owner's interest in the vessel and its cargo. 46 U.S.C. § 183(a). Morgan maintains that he is just such an owner because the collision giving rise to liability occurred while Blaha owned and operated Barge No. 45, so that any relevant acts or omissions were beyond Morgan's own "privity or knowledge." This argument stretches the Limitation Act beyond its breaking point. The clear intent of Section 183(a) is to protect owners whose vessels encounter a mishap in circumstances beyond the owner's control. The legislative history of the Limitation Act, originally passed in 1851, indi-

---

1. Section 183(a) provides:
   The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.
   46 U.S.C. § 183(a).

cates that its purpose was to encourage investment in the shipping industry, not to provide incentives to salvagers. *See University of Texas Medical Branch at Galveston v. United States*, 557 F.2d 438, 454 (5th Cir.1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). We thus believe it relatively self-evident that Congress wanted to assure investors of a limit on their liability in the event of future mischief and had no intention of protecting successors-in-interest like Morgan who invest in mischief completed.

Furthermore, it appears highly unlikely that the Limitation Act is available in any circumstances to defendants in actions arising under the Wreck Act. No court has ever interpreted the former to trump the latter. The Supreme Court, although without an explicit holding, has declined to apply the Limitation Act in a Wreck Act proceeding. *See Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 205–06 & n. 17, 88 S.Ct. 379, 387–388 & n. 17, 19 L.Ed.2d 407 (1967). Moreover, in *University of Texas Medical Branch*, the Fifth Circuit squarely rejected the plaintiff's attempt to use the Limitation Act as a shield against Title 33 liabilities. 557 F.2d at 452.

Morgan is correct to point out that both *Wyandotte* and *University of Texas Medical Branch* focus on the negligence of the particular owners, but his lack of negligence in the Peace Bridge collision does not distinguish those cases in any relevant sense. It would be a curious result indeed to hold that the Limitation Act does not protect its obvious beneficiaries—shipowners—in Wreck Act cases but somehow protects those who step into their shoes after the fact.

In ruling that the Limitation Act does not afford Morgan a limitation on liability, we express no opinion as to whether the amendments to the Wreck Act, 33 U.S.C. §§ 409, 414 and 415 (Supp.V 1987), under which the government proceeds *in personam* against Morgan, authorize such an action in light of their enactment only after his abandonment of the vessels. This ques-

tion and the factual disputes addressed in the parties' briefs await further proceedings in the district court.

Affirmed.